IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RUSTY CHRISTIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 08-3343-CV-S-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 et seq. and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on

the record as a whole.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion
-----------

Plaintiff was 32 years old at the time of the hearing before the ALJ.  He alleges disability due to brain surgery, a learning disability, sleep apnea, back and neck pain, a brain shunt, and high blood pressure.  Plaintiff has a high school diploma, with special education classes.  He has past relevant work as a laborer and kitchen helper.

At the hearing before the ALJ, plaintiff testified that he had no problems driving; that he completed high school with special education in most classes; that he can read a newspaper but loses interest in it; and that he can write a grocery list and do simple addition and multiplication.  Plaintiff also testified that he has headaches three or four times a week, which he treats with Tylenol and lying down.  They might last an hour if he can lie down, but at least one has lasted over a day.  He stated that he is limited in his sitting and standing because of his back and neck.  His neck hurts because of what doctors have done in his brain surgeries–he has had one on each side of his neck, and his neck has been twisted.  At the time of the hearing, he was working with Lake Country Rehabilitation, trying to adapt and get back to normal after his injury.  He had attended mandatory parenting classes to get custody of his daughter, which took about 10-12 weeks.  He has some side effects from medication, including feeling drugged and drowsy, usually for a few hours after he takes them.  He takes two or three medications several times a day.  Plaintiff testified that he did not think he can do any of his past jobs because his memory is "very, very short and I can't remember, like if they give me a sequence of events they want me to do them in I may remember some but not all, and not in the order they want me to do them in." [Tr. 1317].  He stated that his condition has progressively worsened in terms of staying on track; he gets distracted very easily and gets tired.  He has a hard time paying attention and in

3

not being able to remember things people tell him to do.  His memory has worsened; he can't remember where he just set something down a few minutes before, and must use post-it notes to try to remember things he just ordinarily needs to do.  He lost most of his jobs in the past by being fired because of his attention span and not being able to remember directions.  He also had problems getting along with co-workers and supervisors because they would think he was not paying attention or was directly defying them.  Plaintiff testified that his cognitive disorder and personality disorder, ADHD, cause him to not be able to sleep much at night because of restlessness, and then feeling drowsy during the day.  He takes a nap, usually in the afternoon, about once a day for 35-40 minutes.  He has problems with concentration and confusion.  For example, sometimes he cannot say what he wants to, which causes him to become aggravated and get angry and upset. This is especially true since his injury.  He has had problems with anger and confrontation, which has worsened and caused problems on the job.  He is defensive and won't back down.  He also has poor judgment.  Regarding physical problems, plaintiff testified that he has pain in his neck and low back.  His neck is stiff all the time, with pain radiating into his shoulders and arms, depending on what he is doing.  His low back pain causes him to toss and turn at night; he has to change positions and sometimes has to get up and walk around, as it hurts to lie down.  He has problems walking, and cannot walk a couple of hundred yards without his back hurting.  Sitting also causes his back to hurt.  Plaintiff has been treated for high blood pressure, for which he takes medication, and he tries to avoid confrontational situations.  He has been treated for sleep apnea, but does not use the machine as recommended because of his tossing and turning, which resulted in it getting wrapped around his throat.  He has problems with fatigue, and tires easily.  Plaintiff testified, regarding daily activities, that he sometimes

takes his daughter to school, he does the dishes and prepares the meals, he vacuums and takes out the trash, he does the grocery shopping, and he does visit with friends. He usually just sits around and talks or watches movies. Plaintiff is a member of a support group for individuals with brain injuries.

Plaintiff's pre-vocational instructor and community support coach with Lake Country Resource Center also testified on plaintiff's behalf. Her role is to equip him with vocational skills, such as appropriate work behavior, and to provide community support to help him be more independent. She had worked with him for about seven months, seeing him eight hours a week for the in-home portion of their services, and 15 hours a week for pre-vocational skills. She sees him almost every day, and notices a lot of forgetfulness. She believes his memory loss is pretty pervasive. Based on his reports, he doesn't get along with some people. In terms of his ability to catch onto things, Ms. Odwara testified that regarding his comprehension, he takes longer. She has heard him complain of headaches and back pain.

A vocational expert testified regarding plaintiff's past work. She stated that his work at Wal-Mart, where he worked as a cart pusher, and at Schwan's, where he worked in the warehouse, was between medium and heavy level, and would fit the category of warehouse worker or laborer of stores. His work at Kentucky Fried Chicken, Village Inn, and Tony's all fit the category of kitchen helper, with light to medium level work. Based on the hypothetical posed by the ALJ, the vocational expert testified that he could perform both of his previous jobs, as an unskilled, level two position. When the ALJ presented the MSSP prepared by nurse practitioner Robert Marsh, the vocational expert testified that he would not be able to perform his past relevant work. She did state, however, that there would be some sedentary, unskilled

5

work with a sit/stand option that he could perform, such as a production table worker or final assembler. The ALJ presented the vocational expert with the MSSM from licensed professional counselor Brawnier. The expert testified that plaintiff would not be able to perform his past relevant work; when presented with the MSSM of Dr. Martin, a psychologist, she also testified that the limitations would preclude plaintiff from performing his past relevant work. She stated that given the limitations delineated, there would be no work that plaintiff could perform.

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, May 20, 2005. He further found that the medical evidence established that plaintiff suffers from: "history of subdural hematoma; hydrocephalus; status post placement of ventriculoperitoneal shunt; cognitive disorder, not otherwise specified; major depressive disorder; and chronic low back and neck pain with diagnosis of strain/sprain. . . ." [Tr. 752-53]. He further found that plaintiff was only partially credible. It was the finding of the ALJ that plaintiff is capable of performing his past relevant work as a laborer of stores. Therefore, it was the ALJ's finding that plaintiff was not under a disability as defined by the Act from May 20, 2005, through the date of his decision.

Plaintiff contends that the ALJ's decision should be reversed because the ALJ improperly dismissed the opinions of plaintiff's treating and examining providers; that the Residual Functional Capacity ["RFC"] was not based upon substantial evidence in the record; that the ALJ's step-four analysis was incorrect; and that the ALJ failed to perform a proper credibility analysis.

A review of the voluminous medical records in this case supports a finding that plaintiff has received a wide range of medical care and services for various severe conditions. He

6

suffered a blow to the head while working in 2001, which caused a subdural hematoma and required surgery. He was thereafter rated with a 12% permanent partial disability by physiologist Jeffrey Woodward, M.D., in 2002, and received worker's compensation benefits. The ALJ found that his history of subdural hematoma was a severe impairment. Plaintiff also has a history of a brain deformity and hydrocephalus, for which a shunt was implanted in his brain in 1990. The shunt is still in place, but the ALJ recognized that "this disorder was present and progressively worsening for some time before discovery, and some learning disability resulted." [Tr. 753]. Therefore, he found this condition to constitute a severe impairment. He also concluded that plaintiff's history of cognitive disorder and major depressive disorder were severe impairments. The ALJ found that plaintiff's history of chronic low back and neck pain also constituted a severe impairment. It was his conclusion, however, that plaintiff's medical conditions did not meet or equal a listed impairment. In doing so, he concluded that plaintiff's mental impairments did not cause at least two marked limitations; that there was little deterioration of mental functioning after the head injury; that plaintiff only had moderate difficulties with concentration, persistence or pace; and that he only has mild restrictions in daily living.

Regarding plaintiff's mental limitations, the ALJ relied on the opinion of an agency examining psychologist, Eva Wilson, Psy.D., who performed psychological testing in 2005. She concluded that plaintiff could meet the demands of unskilled work activities. The ALJ found this opinion to be consistent with that of neuropsychologist Dale Halfaker, Ph.D., who also performed psychological testing in 1999. Therefore, the ALJ concluded that the "medical evidence shows little deterioration of mental functioning brought on by the 2001 head injury."

7

[Tr. 758]. In a Mental Source Statement-Mental ["MSS-M"], completed by Dr. Halfaker in 2004, he indicated that plaintiff had markedly limited functional capacity in the ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances. He also found moderately limited functional capacity in a number of areas, including the ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, and to work with or around others. The ALJ discounted this opinion because Dr. Halfaker he viewed the diagnosis as different than the one 1999, and felt it was compromised, apparently, because Dr. Halfaker was counseling plaintiff regarding his divorce and his goal to live independently. It should be noted that Dr. Halfaker completed a wide range of psychological testing in 1999, and reviewed plaintiff's history of brain deformity, head tremors, and learning and behavior problems. At that time, he diagnosed him cognitive disorder, mild neurocognitive disorder, major recurrent depressive disorder, borderline personality features, and a subarachnoid cyst of the third ventricle and development of hydrocephalus, resulting in placement of a ventriculoperitoneal shunt. He found that plaintiff had average verbal reasoning and problem-solving skills when he could work at his own pace, but that he had some difficulty with higher level attention skills, and that his memory was weak. The doctor thought he had some potential to benefit from vocational rehabilitation services.

      The ALJ rejected the opinion of Dr. Paff, who examined plaintiff in 2004 at the request of his attorney, who opined that plaintiff had marked physical and mental limitations. He found that "his opinion appears to be based solely on the claimant's subjective complaints regarding his cognitive deficits. This opinion is so inconsistent with Dr. Paff's examination report and the weight of the objective medical evidence that it is given little weight." [Tr. 761]. A review of Dr

Paff's report, however, indicates that he reviewed a medical history summary as part of his examination of plaintiff. This history included the fact that plaintiff began having problems as a two-year old, which could be "described as mental problems with decrease in ability to learn." [Tr. 511]. His IQ dropped over a three-year period from 109 to 79; he was discovered to have a large arachnoid cyst in 1980 and had shunt surgery in 1990 due to hydrocephalus; he had symptoms of mid-brain damage with memory loss; when he went to vocational rehabilitation in 1999, he was noted to have low self-esteem, an 88 IQ, could not store information, could not do multi-tasks, and had below average verbal skills. In 2001, plaintiff developed a severe headache; he was discovered to have swelling at the base of the neck, and was diagnosed with a subdural hematoma from blunt force trauma, which required surgery. The doctor also reviewed plaintiff's subjective complaints, and reached the conclusion that he had minimal brain damage, which "creates a situation in which people can appear quite normal, but not really be able to work on a regular basis as they cannot concentrate properly." [Tr. 513]. Therefore, he concluded that plaintiff was unable to work. He noted that he had worked at one job in the past for 2 ½ years, but that he believed he could no longer do that job. Plaintiff stated that he did get a job through vocational rehabilitation, but that he was terminated after four weeks because he did not call in.

According to the report of neuropsychologist Dr Thomas Martin, who performed a consultative examination on plaintiff on April 17, 2007, plaintiff suffers from cognitive and personality changes due to hydrocephalus and TBI (traumatic brain injury with subdural hematoma); adjustment disorder with mixed anxiety and depressed mood, rule out attention-deficit hyperactivity disorder; hypertension; sleep apnea that is not routinely treated; and chronic headache, back and neck pain. [Tr. 1171]. At that time, the doctor made a number of

9

observations and recommendations, including outpatient counseling for his coping, adjustment, frustration and pain issues; a psychiatric evaluation; vocational rehabilitation services; using a daily planner to promote organizational and recall skills; avoid multi-tasking; working on his cognitive efficiency; participating in a pain management program; outpatient occupational or physical therapy to promote balance, coordination, upper-extremity grip strength and fine motor skills; contacting the Southwest Center for Independent Living; and contact agencies and support groups for brain injuries. Dr. Martin noted that plaintiff's "cognitive or emotional dysfunction, physical limitations (e.g., unable to sit or stand for extended periods and chronic pain). . . prevent him from maintaining competitive employment, he is encouraged to pursue Social Security Disability benefits." [Tr. 1172]. The doctor completed an MSS-M in September, in which he found that plaintiff was markedly limited in his ability to remember locations and work-like procedures; in the ability to perform activities within a schedule, maintain regular attendance and be punctual; to work with others; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. He also found him to have moderate limitations in a number of areas. The ALJ gave this opinion little weight because it was inconsistent with the opinion at the time of his examination, inconsistent with the formal testing the doctor did, and inconsistent with plaintiff's daily activities.

The ALJ also gave little weight to the opinion of plaintiff's family doctor, who completed an MSS-P in 2004 and found that plaintiff would be able to perform less than sedentary work because he was not a specialist. He rejected the opinion of Ms. Brawnier, who treated plaintiff for 18 months in family and individual therapy. She noted that plaintiff had a weak short term memory, emotional difficulties, and problems following routine and schedules. She assessed him

with extreme limitations in the ability to maintain attention and concentration for extended periods, and markedly limited in all areas of understanding and memory, and in most areas of sustained concentration and persistence, social interaction, and adaptation.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). Only if the opinion is unsupported by medically acceptable clinical data may it not be given great weight. Smallwood v. Chater, 65 F.3d 87,89 (8th Cir. 1995). Even opinions not supported by acceptable clinical or diagnostic data, however, must be evaluated, taking into consideration the examining and treating relationship, the consistency, and other factors, according to agency regulations.

Defendant contends that the ALJ properly afforded great weight to the opinion of Dr. Anderson, who examined plaintiff and performed psychological testing in March of 2005. Dr. Anderson found that plaintiff could at last remember simple instructions, especially if he had auditory instructions, and that his concentration, pace, and persistence were adequate for simple tasks. The ALJ found this opinion to be consistent with his formal testing, daily activities and reports of vocation experts. He also afforded weight to the opinion of Dr. Woodward, who examined plaintiff in connection with his workers' compensation claim in 2002, and who indicated that although he had a 12 percent permanent partial disability from his head injury, he could return to full-time regular work without physical restriction. The ALJ rejected the opinion of Dr. Paff, who opined in January of 2004 that plaintiff had marked physical and mental limitations, because he found it to be inconsistent with his examination report and the weight of

11

the objective medical evidence. He also rejected the opinion of Dr. Halfaker, who found plaintiff to have some moderate to marked limitations, finding it to be inconsistent with his reports, treatment notes, and formal tests results. Additionally, he rejected the opinion of plaintiff's family physician, Dr. Thies, who limited plaintiff to less than sedentary work, because he found this to be inconsistent with the doctor's treatment notes and to be based on plaintiff's subjective complaints. The ALJ also considered Dr. Thies to not be a treating source. According to defendant, the ALJ did consider the opinion of Thomas Martin, Psy. D., who noted in September of 2007 that plaintiff had moderate to marked mental limitations. He found this opinion to be inconsistent with his examination and formal test results, and with plaintiff's daily activities. Also, the ALJ rejected the opinion of plaintiff's family counselor, Alison Brawnier, M.S., who opined that he would find it extremely difficult to hold a job due to his short term memory difficulties, because the counselor provided no treatment notes or evidence of memory testing. Finally, the ALJ rejected the opinion of a nurse practitioner, Robert Marsh, because he was not a licensed physician and only treated plaintiff for minor illnesses.

Plaintiff contends that the record contains six medical source statements from treating and/or examining providers that would preclude him from performing competitive employment, all of which the ALJ rejected. He submits that the ALJ should have given significant, if not controlling weight, to Drs. Halfaker and Thies, and that the opinion of Alison Brawnier should have been addressed. He also asserts that the ALJ should have provided more of a reason to discount the opinion of Dr. Paff, rather than rejecting it merely because he evaluated plaintiff at the request of his attorney. Finally, plaintiff asserts that if the ALJ was going to give weight to Dr. Anderson's opinion, he should have given the same weight to the opinion of Dr. Martin, given

12

that they both reached their opinions by performing objective psychological testing.

After a full review of the record and the ALJ's decision, the Court finds that is was error to not have given controlling weight to the treating physicians and medical providers in this case, and that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling. While the ALJ stated that there were inconsistencies and unsupported opinions, the Court finds that the medical records, as a whole, support a finding that plaintiff's mental impairments constitute a disability. There is nothing in the record to suggest that the opinions of Drs. Paff, Martin, and Thies are not consistent with each and with other substantial evidence in the record. Based on the record as a whole, the Court finds that it was error for the ALJ to have relied on the opinions of agency consultative examiners, while rejecting the substantial objective medical evidence to support a finding of disability.

Based on a full review of the record, the Court finds, therefore, that the ALJ erred in not affording significant weight to the opinions of plaintiff's treating sources. There is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled and that he could perform his past relevant work. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

                                                /s/ James C. England
                                                 JAMES C. ENGLAND

United States Magistrate Judge

Date: 2/12/10